RICHARD L. PRINZ
Federal ID 3255
TX State Bar #16331000
500 Jefferson, Suite 2040
Houston, Texas 77002
713-651-9111 phone
713-651-9117 fax
rprinz@aol.com
Attorney for Plaintiffs

UNITED STATES DISTRICT COURT
FOR THE
SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| JUAN PALACIOS AND HIS | * | |
| SONS, OLMAN PALACIOS; | * | |
| A.P., A MINOR; AND | * | |
| J.J.P., A MINOR, | * | |
| Plaintiffs | * | CASE NO._____ |
| | * | |
| vs. | * | |
| | * | |
| DEPARTMENT OF HOMELAND SECURITY; | * | COMPLAINT FOR |
| UNITED STATES CITIZENSHIP AND | * | DECLARATORY AND |
| IMMIGRATION SERVICES; UNITED | * | INJUNCTIVE RELIEF |
| STATES IMMIGRATION AND CUSTOMS | * | |
| ENFORCEMENT; AND UNITED STATES | * | |
| OF AMERICA, | * | |
| Defendants | * | |

**INTRODUCTION**

1.    This lawsuit challenges the termination of the parole

portion of the Central American Minors ("CAM") program as it

applies to plaintiffs - a program established in 2014 in

response to the humanitarian crisis presented by thousands of

unaccompanied minors fleeing danger in El Salvador, Guatemala,

and Honduras and arriving at the Southern Border.  Over the

1

years, the CAM Program enabled thousands of Central American parents lawfully residing in the United States to safely and legally bring their children to the United States as refugees or parolees through an orderly process in which eligibility determinations were made in the minors' home countries.

2. Juan Palacios, who lives legally in the United States under Temporary Protective Status (TPS) began trying to bring his three sons to the United States under the CAM Program in 2015. After medical examinations, extensive security checks, and many other government procedures, parole was granted finding "significant public benefit" for the childrens' parole. Juan Palacios, the children's father, spent thousands of dollars on medical examinations, airline tickets and the like. On January 20, 2017, the three children arrived in Houston, Texas from El Salvador and were granted a two-year parole.

3. In August 2017, each of the children were notified that the CAM Program was terminated and thus their parole was terminated. They were invited to file a request for re-parole for humanitarian purposes which they did but the request was denied, and the children have been ordered to depart the United States by September 15, 2019.

4. The termination of the CAM Program violated, among other things, the Administrative Procedures Act and the Fifth Amendment guarantees of Due Process and Equal Protection.

Plaintiffs request that the court set aside the termination of the CAM parole program and order the government to extend plaintiffs' parole for two years and grant them a work permit.

**PARTIES**

5.  Plaintiff, Juan Palacios is a citizen of El Salvador who lives in the Houston, Texas area with his wife and three boys. He has lived in the United States since 2000 and has had TPS status since 2001. He brought his three children to the United States under the CAM Program on January 20, 2017.

6.  Olman Palacios, the oldest is 25 and works as an electrician for Dynamic Electric in Tomball, Texas since January 2017.

7.  A.P. is 18 years old and attends high school in the Houston, Texas area. He will begin his senior year in high school on August 20, 2019.

8.  The youngest, J.J.P. is 16 years old and attends high school in the Houston, Texas area. He will also begin his school year on August 20, 2019.

9.  Defendant, United States Department of Homeland Security ("DHS") is a department of the executive branch of the United States government and is an agency within the meaning of 5 U.S.C. § 552(f)(1).

10. Defendant, United States Citizenship and Immigration Service ("USCIS)") is an operational and a support component

3

agency within DHS. USCIS is the DHS sub-agency responsible for making determinations on CAM applications and for processing cases in the CAM Program generally and in the CAM Parole Program.

11. Defendant, United States Immigration and Customs Enforcement is an operational and a support component agency within DHS. USICE is the DHS sub-agency responsible for enforcing the immigration laws.

12. Defendant, United States of America includes all government agencies and departments responsible for the termination of the CAM Program and termination of plaintiffs' parole.

## JURISDICTION AND VENUE

13. This court has jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States. This court has additional remedial authority under the Declaratory Judgment Act, see 28 U.S.C. § 2201 et seq., and the Administrative Procedure Act, 5 U.S.C. §§ 701-706.

14. Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. § 1391(e)(1) because all plaintiffs reside in this judicial district and each defendant is an agency of the United States.

## FACTUAL ALLEGATIONS

15. The Obama Administration first proposed the CAM Program on September 18, 2014 as part of the President's annual

4

recommendation to Congress on the proposed refugee administrations for the following fiscal year, pursuant to 8 U.S.C. §§ 1157(d)&(e). The annual Presidential Determination on Refugee Admissions incorporated these recommendations, identifying people in El Salvador, Honduras and Guatemala as being of special humanitarian concern. The Administration labeled the CAM Program as a "safe, legal and orderly alternative to the dangerous journey that some children are taking to reach the United States". See U.S. Department of State webpage - *Central American Minors (CAM) Program.*

16. CAM was structured as a dual refugee/parole program. Central American parents lawfully living in the United States could apply for their minor children and qualifying family members in the Northern Triangle countries to be considered for refugee resettlement while still in their home countries. This type of in-country refugee processing takes place only after U.S. Department of State (DOS) in consultation with DHS, and USCIS, identifies a specific group as being in need of resettlement. The children and qualifying family members were accepted as refugees if they could establish that they qualified for resettlement under U.S. law - by demonstrating a well-founded fear of persecution based on religion, race, nationality, political opinion, or membership in a particular group. Even if the children and qualifying family members did

not meet the specific eligibility criteria for refugee admission, they were automatically considered on a case-by-case basis for parole pursuant to 8 U.S.C. § 1182(d)(5) under the CAM Parole program. USCIS promised participants that if they were eligible for the CAM Program but deemed ineligible for refugee status, they will then be considered on a case-by-case basis for parole in the United States and that a separate application for this parole process is *not required* if the individual already has access to the CAM program. Children and qualifying family members were eligible for parole to join their family members in the United States if USCIS determined that: (1) they were "at risk of harm"; (2) they "clear[ed] all background vetting"; (3) USCIS had received "no serious derogatory information"; and (4) a third party had committed to financially support them in the United States.

17. To qualify as a CAM applicant, a U.S.-based parent had to be at least 18 years old and be lawfully present in the United States as a Legal Permanent Resident, Temporary Protected Status (TPS) recipient, Parolee, or Deferred Action Recipient. In order to be eligible, Parolees and Deferred Action Recipients had to have held that status for at least one year at the time of application.

18. To qualify as a CAM beneficiary, a child had to be under 21 years old; unmarried; a national of El Salvador, Guatemala, or

6

Honduras, and the genetic, step or legally adopted child of a qualifying parent. The CAM Program also allowed close family members of qualifying children to participate as beneficiaries under certain conditions. In mid-2016, the Obama Administration expanded the program to allow additional immediate family members of the children to apply as "derivative" beneficiaries.

19. Juan Palacios heard of the CAM Program through media in 2015 and began the long process to bring his three children. He worked with Refugee Services of Texas and the International Organization of Migration in El Salvador to go through the nine steps necessary to allow his boys to enter the United States. These steps included extensive interviews in the United States and El Salvador; obtaining passports and other documents to confirm relationship; thorough security checks; medical examinations; and planning for travel itinerary. Including airfare, Mr. Palacios spent between $10,000.00 and $12,000.00 to reunite his three children who arrived in Houston on January 20, 2017.

20. The two youngest children have attended high school since they arrived in the United States. The middle son is enrolling in his senior year this month and his younger brother will enroll as a junior this month if allowed to stay in the United States.

21.  Olman Palacios, the oldest applied for and received a work permit in 2018.  He applied to renew the permit but in March 2018, his application was denied.  He currently is employed as an electrician at Dynamic Electric in Tomball, Texas.

22.  On approximately August 27, 2017, each of the Palacios boys received a letter from DHS, USCIS, International Adjudication Support Branch in Anaheim, California informing them as follows:

> You were paroled into the United States pursuant
> to the Central American Minors (CAM) Parole program.
> On August 16, 2017, the Acting Secretary of the
> Department of Homeland Security announced that
> USCIS is terminating the Central American Minors
> (CAM) Parole program.  This does not affect your
> current period of parole.  If you wish to remain
> in the United States after your current parole
> period expires, you may still apply for re-parole,
> if needed, following the standard parole application
> process below.

The Notice advised the Palacios boys that they could file form I-131, Application for Travel Document checking a block requesting re-parole and submitting a fee of $660.00 (for a total of $1980.00) and an affidavit of support.  The instructions said that parole would only be granted for "urgent humanitarian or significant public benefit reasons".

23.  On June 17, 2019, all three Palacios boys received a letter that was labeled "approval notice - limited parole to depart the United States".  This letter was no approval but rather a denial of their request for re-parole and an order for them to depart the United States by September 15, 2019.  The letter required

the boys to report their departure to the U.S. immigration in Houston, Texas. The letter contained no reasoning as to why re-parole would be denied when the conditions in El Salvador that caused the U.S. government to allow these children into the United States has not changed.

## REQUEST FOR TEMPORARY INJUNCTIVE RELIEF
## AND IRREPARABLE HARM

24. Plaintiffs' parole will be revoked as of September 15, 2019. Plaintiffs request an injunction to extend their parole during the pendency of this lawsuit.

25. Plaintiffs will suffer irreparable harm if their parole is revoked because it will result in the separation of the family and the return of the young boys to El Salvador where it is unsafe to live because of gang violence and government corruption.

## CAUSES OF ACTION

## COUNT ONE
## ADMINISTRATIVE PROCEDURE ACT -ARBITRARY & CAPRICIOUS

26. The shutdown of the CAM Parole program in January 2016 constitutes a final agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

27. The official termination of the CAM Parole program in as it applies to plaintiffs August 2017 without any explanation and without identifying any change in circumstances to justify the

termination of a policy upon which thousands of people had relied to their detriment constitutes a final agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

28.  The rescission of approval for parole without an explanation, without any individualized process, and without identifying any change in circumstances to justify the rescission of a status upon which thousands of people relied to their detriment constitutes a final agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law".  5 U.S.C. § 706(2)(A).

## COUNT TWO
### ADMINISTRATIVE PROCEDURE ACT - *ACCARDI*

29.  The termination of the CAM Parole program and rescission of approval for parole are final agency actions that violate agency procedures, precedents and policies.

30.  The rescission of approval for parole for individuals for whom parole was authorized violated 8 U.S.C. § 212.5(f).

31.  The termination of the CAM Parole program and the rescission of approval for parole should therefore be set aside under the principle articulated in *United States ex. rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954).

32.  In addition, Defendants' failure to comply with their own procedures and regulations render the termination of the CAM

10

Parole program and the rescission of approval for parole "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The termination of the CAM Parole program and the mass rescission should therefore be set aside pursuant to 5 U.S.C. §§ 702 and 706(2).

### COUNT THREE
### FIFTH AMENDMENT - DUE PROCESS

33. Plaintiff parent who is lawfully present in the United States has constitutionally protected liberty interests in the companionship and society of their family members.

34. The Due Process Clause protects Plaintiffs against arbitrary or irrational deprivations of their constitutionally protected interests, as well as from deprivations that are outside the normal manner prescribed by law. The government's burden is greater where, as here, the liberty interests at stake derive from well-established and significant reliance interests.

35. Defendants' August 16, 2017 termination of the CAM Parole program, and their rescission of approval for parole violated Plaintiffs' right to due process because Defendants' actions were arbitrary, irrational, and outside the manner prescribed by law.

36. Moreover, Defendants' deprivation of Plaintiffs' liberty interests served no rational purpose other than to "disrespect and subordinate" Latinos. Denying a fundamental right based on

such discriminatory intent is "so directly subversive of the principle of equality at the heart of the [Due Process Clause]" that it "deprive[s these persons] of liberty without due process of law." *Loving v. Virginia*, 388 U.S. 1, 12 (1967); see *Obergefell v. Hodges*, ___U.S.___, 135 S. Ct. 2584, 2603-5 (2015).

37. Defendants' conduct violates the substantive and procedural due process rights protected by the Fifth Amendment of the Constitution.

## COUNT FOUR
### FIFTH AMENDMENT - EQUAL PROTECTION

38. The Due Process Clause of the Fifth Amendment contains a guarantee of equal protection.

39. Defendants' decisions to terminate the CAM Parole program and rescind approval for parole violate the equal protection guarantee because they were substantially motivated by discriminatory intent on the basis of race, ethnicity, and national origin.

40. Defendants have thus violated the equal protection guarantee of the Fifth Amendment by engaging in intentional discrimination based on race, ethnicity, and national origin.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully request that this Court:

12

A. Grant injunctive relief to allow plaintiffs' parole to be extended throughout this lawsuit;

B.    Declare that Defendants' termination of plaintiffs' parole was unlawful under the APA and the Fifth Amendment;

C. Set aside Defendants' unlawful termination of parole for Plaintiffs;

D. Enjoin and restrain all Defendants and their officers, agents, servants, employees, attorneys, and all persons who are in active concert or participation with any of them, from implementing or enforcing the decisions to terminate the CAM Parole program for parole status;

E. Direct Defendants to approve parole status for Plaintiffs;

F. Award Plaintiffs reasonable attorney's fees and costs for this action; and

G. Grant any other and further relief that this Court may deem just and proper.

DATED:    August 15, 2019

Respectfully submitted,

/s/ Richard L. Prinz
RICHARD L. PRINZ
Attorney for Plaintiffs