IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JUAN PALACIOS, *et al.*, | § § § | |
| Plaintiffs, | § § | |
| VS. | § § | CIVIL ACTION NO. H-19-3051 |
| DEPARTMENT OF HOMELAND SECURITY, *et al.*, | § § § § § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

Juan Palacios and his sons, Olman Palacios, A.P., and J.J.P., sued the Department of Homeland Security in August 2019 for terminating the parole portion of the Central American Minors Program in August 2017. (Docket Entry No. 1 at 1–2). Olman, A.P., and J.J.P. were granted a two-year parole term, from January 20, 2017 to January 19, 2019. (Docket Entry No. 1 at 2; Docket Entry No. 5-3 at 1). They were notified in August 2017 that the Program termination did not affect their ability to remain in this country through January 19, 2019, but they would have to leave the country after that unless they established another basis to remain. (Docket Entry No. 1 at 8; Docket Entry No. 5-1 at 1).

In September 2018, just over one year after the August 2017 notification, the sons applied for reparole. (Docket Entry No. 1 at 8; Docket Entry No. 5-3 at 1). Each filed a Form I-131, "Application for Travel Document," with the Department. (Docket Entry No. 1 at 8; Docket Entry No. 5-3 at 1). The Department denied those applications on June 17, 2019, and the Palacioses were notified on the same day. (Docket Entry No. 1 at 8; Docket Entry No. 5-3 at 1). The

Department gave the young men an extension of time ("[l]imited [p]arole") until September 15, 2019, to leave the country or obtain lawful immigration status. (*Id.*).

The Palacioses applied for a temporary restraining order and preliminary injunction to: extend the three sons' parole until the end of this litigation; prevent the Department from enforcing the termination of the Parole Program; allow the sons to remain as if the Program was still in effect and they had successfully received two-year reparole under the Program; and require the government to grant or extend their work authorizations "parallel to their paroles." (Docket Entry No. 1 at 3, 13; Docket Entry No. 5 at 1–2). The government opposed the motion, and the court held oral argument on September 10, 2019.

After carefully reviewing the complaint, the motion, the record, and the applicable law, the court denies the application. The Program's termination and the subsequent denial of reparole will irreparably harm the Palacios family. The problem is that they failed to demonstrate a likelihood of success on the merits.

**I.    Background**

The Central American Minors Program, created in 2014 by the Obama administration, allowed parents lawfully in the United States to apply to bring their children and other qualifying relatives from Guatemala, Honduras, or El Salvador to the United States. *S.A. v. Trump*, 363 F. Supp. 3d 1048, 1054 (N.D. Cal. 2018). The Program permitted admission under refugee status or on temporary parole. *Id.* The Department of Homeland Security evaluated whether potential beneficiaries qualified for refugee status and, if not, considered them for parole. *Id.* Parole created no permanent immigration status. *Id.* at 1057. It was granted on a finding that the beneficiary cleared background vetting; that there was no significant derogatory information about the beneficiary; that the beneficiary was in danger in his or her home country; and that the beneficiary

had someone who would provide financial support while the beneficiary was in the United States. *Id*.

In August 2017, the Trump administration terminated the parole element of the Program. *Id*. at 1064. The administration allowed individuals who were paroled before the Program's termination to stay in the United States until their original parole terms expired (barring other grounds for parole revocation), and invited them to apply for reparole independent of the eliminated Program by filing a Form I-131. *Id*. (quoting Termination of the Central American Minors Parole Program, 82 Fed. Reg. 38,926, 38,927 (Aug. 16, 2017)). The Federal Register notice stated that "[p]arole will only be issued on a case-by-case basis and only where the applicant demonstrates an urgent humanitarian or a significant public benefit reason for parole and that applicant merits a favorable exercise of discretion." *Id*.

The Program termination followed President Trump's January 2017 executive order instructing the Secretary of Homeland Security to "end the abuse of parole . . . provisions" by "tak[ing] all appropriate action to ensure" that the Department granted parole in compliance with federal law. *Id*. at 1061 (quoting Exec. Order No. 13,767, 82 Fed. Reg. 8793, 8795–96 (Jan. 25, 2017)). The Immigration and Nationality Act provides that immigration parole may be granted "temporarily" and "only on a case-by-case basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A) (2018). In February 2017, then-Secretary of Homeland Security John Kelly issued a memorandum stating that "the [Act's] language appears to strongly counsel in favor of using the parole authority sparingly." *S.A. v. Trump*, 363 F. Supp. 3d. at 1063–64. In August 2017, the Department of Homeland Security determined that the Central American Minors Parole Program—which approved 99% of potential beneficiaries who were not already accepted as refugees—had "provided parole very broadly and not in accordance with the statu[t]e

3

and the President's Executive Order," which require a case-by-case determination. *Id.* at 1054, 1071, 1079 (quoting a 2017 United States Citizenship and Immigration Services document titled "RTQ [response to queries]: Termination of the [Central American Minors] Parole Program"). The Department also stated that the Program was rescinded as part of "a new strategy to secure the U.S. southern border." *Id.* at 1070–71 (quoting United States Citizenship and Immigration Services "Leadership Guidance," August 2017).

Juan Palacios has had Salvadoran Temporary Protected Status in this country since 2001. (Docket Entry No. 1 at 3; Docket Entry No. 5 at 2). He and his wife secured their sons' presence "safely and legally," after years of working and waiting. (Docket Entry No. 1 at 2). Olman, A.P., and J.J.P. arrived in Houston, Texas on two-year parole from El Salvador on January 20, 2017, the day of President Trump's inauguration. (*Id.*). The family had "worked with Refugee Services of Texas and the International Organization of Migration in El Salvador to . . . [organize] extensive interviews in the United States and El Salvador; obtain[] passports and other documents to confirm [family] relationship[s]; [complete] security checks; [arrange] medical examinations; and [prepare a] travel itinerary." (*Id.* at 7). The family spent over $10,000 on the original parole applications and almost $2,000 on the reparole applications. (*Id.* at 7–8). The children developed strong ties to America. Olman is working, A.P. is starting his senior year of high school, and J.J.P. is a junior in high school. (*Id.* at 3; Docket Entry No. 5 at 7).

On approximately August 27, 2017, the three sons received notice that the Central American Minors Parole Program had ended. (Docket Entry No. 1 at 8; Docket Entry No. 5-1 at 1). This was 11 days after the Trump administration announced that it was ending the Program. (Docket Entry No. 5-1 at 1). The notices stated that to obtain reparole independent of the terminated Program, Olman, A.P., and J.J.P. each must file a Form I-131 and establish "that there

are urgent humanitarian or significant public benefit reasons for [him] to remain in the United States." (*Id.*). The notices also stated that the Program termination did not affect the original parole period, meaning they could remain legally until January 19, 2019, and that they "may be eligible for other immigration options." (Docket Entry No. 5-1 at 1–2; Docket Entry No. 5-3 at 1).[1]

The government received the three Form I-131 reparole applications on September 11, 2018. (Docket Entry No. 5-3 at 1). On June 17, 2019, the sons were notified that reparole was denied and that they had until September 15, 2019—eight months after their original parole had ended—to leave the United States or obtain lawful immigration status. (*Id.*; Docket Entry No. 1 at 8).

For convenience, the timeline of events is summarized below:

- 2014: the Obama administration created the Central American Minors Parole Program.[2]

- January 20, 2017: Olman Palacios, A.P., and J.J.P. arrived in the United States for a two-year parole term.[3]

- January 25, 2017: President Trump issued an executive order instructing the Secretary of Homeland Security to "end the abuse of parole . . . provisions" by "tak[ing] all appropriate action."[4]

- August 16, 2017: the Department of Homeland Security terminated the Central American Minors Parole Program.[5]

- August 27, 2017: the Palacioses received notice that the Program had ended and that each could apply for reparole by filing a Form I-131.[6]

- September 11, 2018: the Department received the Palacioses' reparole applications.[7]

---

[1] The Palacioses' attorney stated at oral argument before this court that their asylum applications were rejected.
[2] *S.A. v. Trump*, 363 F. Supp. 3d. at 1054.
[3] (Docket Entry No. 1 at 2).
[4] *S.A. v. Trump*, 363 F. Supp. 3d. at 1061 (quoting Exec. Order No. 13,767, 82 Fed. Reg. at 8795–96).
[5] *Id.* at 1064.
[6] (Docket Entry No. 1 at 8).
[7] (Docket Entry No. 5-3 at 1).

- June 17, 2019: the Palacioses received the Department's letters denying reparole and giving them until September 15, 2019, to leave the country or obtain lawful immigration status.[8]

- August 15, 2019: the Palacioses filed this lawsuit.[9]

- August 30, 2019: the Palacioses moved for a temporary restraining order and preliminary injunction.[10]

The Palacioses contend that the Department's decisions to eliminate the Central American Minors Parole Program and deny the sons reparole are arbitrary and capricious under the Administrative Procedure Act, 5 U.S.C. §§ 500, *et seq.*; that the termination of the young men's parole is "unlawful" in light of the settlement in a similar case, *S.A. v. Trump*, 363 F. Supp. 3d. at 1048; that the "rescission" of the parole violated "8 [C.F.R.] § 212.5(f)";[11] that the Department's decisions violate Juan Palacios's substantive and procedural rights under the Fifth Amendment's Due Process Clause; and that the decisions violate equal protection because they were "substantially motivated" by an intent to discriminate "on the basis of race, ethnicity, and national origin." (Docket Entry No. 1 at 9–12; Docket Entry No. 5 at 6–7).

**II.    The Legal Standard for Granting a Temporary Restraining Order**

A court may grant a temporary restraining order or preliminary injunction only if the movant shows: "(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest." *Jones v. Tex. Dep't of Criminal Justice*, 880 F.3d 756, 759 (5th Cir. 2018) (per curiam) (quoting *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir.

---

[8] (*Id.*; Docket Entry No. 1 at 8).
[9] (Docket Entry No. 1).
[10] (Docket Entry No. 5).
[11] The Palacioses cite "8 *U.S.C.* § 212.5(f)," without explanation. (Docket Entry No. 1 at 10) (emphasis added). This statutory provision does not appear to exist.

2009)).  The party seeking injunctive relief must meet all four requirements.  *Jordan v. Fisher*, 823 F.3d 805, 809 (5th Cir. 2016) (quoting *Bluefield Water Ass'n v. City of Starkville*, 577 F.3d 250, 253 (5th Cir. 2009)).

**III.   Analysis**

The court recognizes the irreparable harm the Palacioses will suffer if their motion is denied.  To be separated after years of striving to unite in this country, after adjusting to a new home in America, and to return to what are described as dangerous conditions in El Salvador, is irreparable harm.  (Docket Entry No. 5-4 at 1–3).  But unless the Palacioses demonstrate a likelihood of success on the merits, the court cannot grant the relief they seek.

The Palacioses are not likely to show that the Department of Homeland Security's termination of the Central American Minors Parole Program was arbitrary and capricious under the Administrative Procedure Act.  An agency action is not arbitrary and capricious if there is a rational connection between the facts the agency found and the decision it made.  *Worldcall Interconnect, Inc. v. Fed. Commc'n Comm'n*, 907 F.3d 810, 817 (5th Cir. 2018).  A court cannot "substitute [its] judgment for that of the agency."  *Sw. Elec. Power Co. v. United States Envtl. Prot. Agency*, 920 F.3d 999, 1013 (5th Cir. 2019) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971)).

The court in *S.A. v. Trump*, 363 F. Supp. 3d at 1080, explained the rational connection between eliminating the Program and the administration's goals of increasing border security and compliance with the Immigration Nationality Act by changing to case-by-case, rather than across-the-board, parole grants.  The Department concluded that the Program, with its near 100% acceptance rate, did not grant parole on a case-by-case basis, as the Immigration and Nationality Act requires, and that ending the Program would help secure the southern border.  *Id*.  These

justifications satisfy the Administrative Procedure Act's deferential standard and undermine the argument that the Program termination was arbitrary and capricious.

The Palacios family contends that they have a strong reliance interest in the continued existence of the Central American Minors Parole Program. (Docket Entry No. 1 at 10; Docket Entry No. 5 at 6); *see Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2126 (2016) (quoting *Fed. Commc'n Comm'n v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009)) ("In explaining its changed position, an agency must also be cognizant that longstanding policies may have 'engendered serious reliance interests that must be taken into account.'"). The sons "are already here in school or working." (Docket Entry No. 5 at 6). Their story is deeply sympathetic. But, as *S.A. v. Trump* held, citing Ninth Circuit law, there is no reliance interest in being approved for temporary parole because parole is subject to agency discretion. 363 F. Supp. 3d. at 1085 (citing *Wong v. United States*, 373 F.3d 952, 968 (9th Cir. 2004)). Although the Palacioses note that they spent almost $2,000 on the reparole application process, the application cost does not create a reliance interest in approval. (Docket Entry No. 1 at 8). The Palacioses have been on notice since August 2017 that the Program had ended, and they have had two years to prepare to leave or obtain lawful immigration status. (Docket Entry No. 1 at 8; Docket Entry No. 5-1 at 1).

The Palacioses argue unpersuasively that denying them reparole is an "unequal application of [the] law[]" because the settlement in *S.A. v. Trump* allowed individuals conditionally approved for parole before the Program terminated to live in the United States. (Docket Entry No. 5 at 6–7). The *S.A.* court enjoined the government from rescinding conditional approvals issued before the Program ended, because "the only steps following conditional approval to travel to the United States and be fully paroled were nondiscretionary ones: the completion of a medical exam, final security checks, and making travel arrangements." *S.A. v. Trump*, 363 F. Supp. 3d. at 1089; *S.A.*

*v. Trump*, No. 18-CV-03539-LB, 2019 WL 990680, at *2 (N.D. Cal. Mar. 1, 2019). The Palacioses did not have a comparable reliance interest because they were not approved for reparole, conditionally or otherwise. They did have a reliance interest in remaining in the United States through their original two-year parole term, and they were allowed to do so.

The Palacioses cite *Ramos v. Nielsen*, 336 F. Supp. 3d 1075 (N.D. Cal. 2018). (Docket Entry No. 5 at 6). The *Ramos* court preliminarily enjoined the government from terminating Temporary Protected Status Program designations for El Salvador, Haiti, Sudan, and Nicaragua. *Id*. at 1108. That case is distinguishable because the Department of Homeland Security did not acknowledge or explain its policy change, in violation of the Administrative Procedure Act. *Id*. at 1097–98; *S.A. v. Trump*, 363 F. Supp. 3d. at 1083. As discussed above, the Department explained its decision to end the Central American Minors Parole Program.

The Palacioses also have not proven a likelihood of succeeding on the claim that the denial of reparole was arbitrary and capricious. The family emphasizes that the government notice denying reparole to live in the United States (and granting a limited extension of time to leave the country or establish immigration status) gave no explanation for the decision. (Docket Entry No. 1 at 10). But this court lacks jurisdiction to review denials of parole under the Immigration and Nationality Act because these actions are "committed to agency discretion by law." 5 U.S.C. § 701(a)(2) (2018); 8 U.S.C. § 1182(d)(5)(A) (permitting the Attorney General to "in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States"); 8 U.S.C. § 1252(a)(2)(B)(ii) (2018) (aside from exceptions not applicable here, "no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under

this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security."). The Fifth Circuit held that Congress "has denied . . . district court[s] jurisdiction to adjudicate deprivations of . . . statutory and constitutional rights to parole." *Loa-Herrera v. Trominski*, 231 F.3d 984, 990–91 (5th Cir. 2000) (citing 8 U.S.C. § 1182(d)(5)(A) in footnote 12); *see also Maldonado v. Macias*, 150 F. Supp. 3d 788, 794–95 (W.D. Tex. 2015) (collecting cases and holding that "[u]nder § 1252(a)(2)(B)(ii), this Court has no jurisdiction to review the Attorney General's discretionary decision not to apply the presumption and the resulting denial of parole.").

The argument that "[t]he rescission of approval for parole for individuals for whom parole was authorized violated 8 [C.F.R.] § 212.5(f)" is not compelling. (Docket Entry No. 1 at 10). Parole was not rescinded in this case; the termination of the Central American Minors Parole Program did not "affect [the Palacioses' original] period of parole." (Docket Entry No. 5-1 at 1). The requirement under 8 C.F.R. § 212.5(f) for the issuance of a travel document applies only when parole "is authorized," not when, as here, reparole is denied.

The substantive and procedural due process claims do not meet the likelihood-of-success-on-the-merits test. The cases cited do not support the claim that Juan Palacios has "constitutionally protected liberty interests in the companionship and society of [his] family members" in the United States. (Docket Entry No. 1 at 11); *see Gebhardt v. Nielsen*, 879 F.3d 980, 988 (9th Cir. 2018) (the alleged "right to reside in the United States with . . . non-citizen relatives . . . runs headlong into Congress'[s] plenary power over immigration" and "cannot be so fundamental that it overrides" congressional authority). The lack of a protected interest undermines the chance of success on a due process claim, whether substantive or procedural. *Edionwe v. Bailey*, 860 F.3d 287, 292 (5th Cir. 2017).

The Supreme Court's ruling in *Trump v. Hawaii*, 138 S. Ct. 2392 (2018) is, as the court in *S.A. v. Trump* noted, "instructive" on the equal protection claim, even though *Trump v. Hawaii* involved an Establishment Clause claim. 363 F. Supp. 3d at 1093–94, 1094 n.138. "For more than a century, [the Supreme] Court has recognized that the admission and exclusion of foreign nationals is a 'fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.'" 138 S. Ct. at 2418 (quoting *Fiallo v. Bell*, 430 U.S. 787, 792 (1977)). The Court upheld a presidential decision "concerning the entry of foreign nationals" after applying "a circumscribed inquiry," concluding that it was not "impossible to 'discern a relationship to legitimate state interests' or that the policy is 'inexplicable by anything but animus.'" *Id.* at 2420 n.5, 2420–21 (quoting *Romer v. Evans*, 517 U.S. 620, 632, 635 (1996)). The Palacioses do not show a likelihood of success in proving that forbidden animus or bigotry caused the Program's termination, so as to make it unconstitutional. Just as the *Trump v. Hawaii* Court reached its decision despite the president's numerous remarks about Muslims, the *S.A.* court rejected this equal protection argument after considering the president's statements about Hispanics and immigrants. *Id.* at 2417–18; *S.A. v. Trump*, 363 F. Supp. 3d at 1093–96. The *S.A.* court emphasized the "circumscribed" equal protection inquiry and the government's "facially legitimate and bona fide reasons" for its decision to end the Program. 363 F. Supp. 3d at 1093–96.

Finally, the Palacioses have not demonstrated a likelihood of success on the claim that the court should "order the government to extend [their] parole for two years and grant them a work permit." (Docket Entry No. 1 at 3; Docket Entry No. 5 at 2). They cite no authority showing that the court has the power to take either action.

## IV.     Conclusion

The motion for a temporary restraining order and preliminary injunction is denied. (Docket Entry No. 5).

SIGNED on September 12, 2019, at Houston, Texas.

                                                  Lee H. Rosenthal
                                   Chief United States District Judge